**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 1:05-CR-280 |
| v. ) | Judge Kollar-Kotelly |
| ) | Motion Hearing Date: 8/25/2006 |
| RONALD BOOKER ) | |

**MOTION TO DISMISS INDICTMENT FOR VIOLATION OF THE SPEEDY TRIAL RIGHTS AND MEMORANDUM IN SUPPORT THEREOF**

Defendant Ronald Booker, (hereinafter "Booker"), through undersigned counsel, respectfully moves the Court for an Order dismissing the indictment in this matter for violation of the speedy trial act. The grounds for this Motion are more fully set forth in the following Memorandum.

**BACKGROUND FACTS**

1.  On or about July 1, 2005, Mr. Booker was convicted of a crime punishable by imprisonment for a term exceeding one year, in D.C. Superior Court Criminal Case No. F1099-93.

2.  On July 28, 2005, Mr. Booker was charged in a one count indictment for unlawfully and knowingly receiving and possessing a firearm, that is, a Ruger .22 caliber semi-automatic pistol, and did unlawfully and knowingly receive a posses ammunition, that is, .22 caliber ammunition whack had been possessed, shipped and transported in and affecting interstate and foreign commerce in violation of Title 18, United States Code, § 922(g)(1).

3.  On July 28, 2005, after being interviewed by the D.C. Pretrial Services Agency, Mr. Booker left the courthouse and did not return to court. A bench warrant was issued.

4.  On August 23, 2005[1], Mr. Booker turned himself into the Prince George's

---
[1]

Department of Corrections and began serving an eighteen months sentence for carrying a pistol without a license.

5. When Mr. Booker was classified as an inmate and his release date was calculated at the P.G. Department of Corrections, he learned that there was a bench warrant outstanding for him from the U.S. District Court for the District of Columbia and this bench warrant was acting as a detainer. This lodged detainer is further confirmed in the Pretrial Service Report from D.C. Pretrial Services Agency updated July 31, 2006 wherein the Supervision Comments, state as follows:

> On 07/31/06, PSA faxed PO Markins a copy of the indictment in CR05-280. It appears that the defendant has not been released from custody to begin the probation term of his sentence. According to the P.G. County Department of Corrections, the defendant was incarcerated in P.G. County, MD from 08/23/05 until 07/28/06. It appears that he was released to a detainer form U.S. District Court in Washington, D.C.

6. On or about September 28, 2005, while incarcerated in P.G. County Correctional Jail in Upper Marlboro, Maryland, Mr. Booker sent three letters, (see Exhibits A, B, and C), to the Criminal Clerk of the Court for Superior Court, Criminal Clerk of the Court for the United States District Court, and the United States Attorney Office for the District of Columbia, (the respective return receipt cards are attached as Exhibits D, E, and F). Each of the letters specifically requested transfer to the District of Columbia under the Interstate Agreement on Detainers, (hereinafter "IAD"), 18 U.S.C. App. III which applies to the transfer of sentenced prisoners for unrelated trials between two states. Furthermore, the letter sent to the U.S. District Court for the District of Columbia, was forwarded by Deputy Clerk Melinda Pugh acting on the behalf of Clerk Nancy Mayer-Whittington to the U.S. Attorney's Office for the District of Columbia, (see Exhibit G).

7. On July 28, 2006, Mr. Booker was released, after serving his sentence, from

P.G. Department of Corrections to the United States Marshal Service, because the detainer had been logged against him, and since Mr. Booker had sent the IAD letters, he had waived any extradition proceedings. The U.S. Marshal Service picked Mr. Booker up and transported him to the District of Columbia where he is currently being detained on the pending charge in CTF.

8.      On August 3, 2006, this Honorable Court requested that the undersigned counsel file a motion briefing the IAD, with a due date of August 14, 2006 for filing of the motion and a hearing on the motion being scheduled for August 25, 2006.

**ARGUMENT**

9.      By virtue of the Interstate Agreement on Detainers Act, Pub.L. No. 91-538, 84 Stat. 1397 (1970) (hereinafter referred to as "the Act"), the United States (and the District of Columbia) entered into the Interstate Agreement on Detainers, 18 U.S.C. App. III (hereinafter, "the Agreement").  The Agreement applies to transfers of sentenced prisoners for unrelated trials between two States, and to transfers from the Federal Government to the States, and from the States to the Federal Government. It does not apply to transfers of Federal prisoners between the several judicial districts for trial on Federal charges. *See United States v. Stoner*, 799 F.2d 1253 (9th Cir.), *cert. denied*, 479 U.S. 1021 (1986).

10.      Article III of the Agreement permits a prisoner to initiate final disposition of any untried indictment, information, or complaint against him/her in another State on the basis of which a detainer has been lodged against him/her. Article IV permits the prosecuting authority of a State in which an untried indictment, information, or complaint is pending to obtain temporary custody of a prisoner against whom it has lodged a detainer by filing a "written request" for custody with the incarcerating State. Article V provides a detailed procedure for obtaining temporary custody.

11.      The Agreement also provides that when a prisoner requests disposition of one matter upon which a detainer has been filed, it constitutes a request for disposition of all matters on which detainers have been filed by the same "[S]tate." Article III(d). The several Federal districts have been held to constitute separate "[S]tates" in this context. *See United States v. Bryant*, 612

F.2d 806 (4th Cir. 1979), *cert. denied*, 446 U.S. 920 (1980). Prosecution on other charges upon which detainers have not been lodged is not authorized by the Agreement unless they arise from the same transaction. (Article V(d)).

12. When the U.S. Attorney initiates the request under Article IV, the charge upon which the request is based must be completely disposed of (including any trial and sentencing, according to some courts) prior to returning the prisoner. If not, unless notice and opportunity for a hearing is provided under Section 9(2) of the Agreement, the charge will be dismissed with prejudice. (Article IV(e)) The several Federal districts have been treated as separate States in this context. *See United States v. Woods*, 621 F.2d 844 (6th Cir.), *cert. denied*, 449 U.S. 877 (1980). Other charges may not be prosecuted at the same time unless they arise from the same transaction. (Article V(d)).

13. The Agreement applies only to "a person (who) has entered upon a term of imprisonment in a penal or correctional institution" (Articles III (a) and IV(a)), and is therefore inapplicable to one incarcerated awaiting trial. *See United States v. Reed*, 620 F.2d 709, 711-12 (9th Cir.), *cert. denied*, 449 U.S. 880 (1980); *United States v. Evans*, 423 F. Supp. 528, 531 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 561 (2d Cir. 1977). Because the Agreement applies only to a detainer based upon a pending "indictment, information, or complaint" which requires a "trial" (Articles III(a) and IV(a)), the Agreement does not apply to a detainer based upon a parole violator warrant. *See Reed, supra*. The procedure for disposition of parole violation detainers is set out in 18 U.S.C. 4214(b). The Agreement is likewise inapplicable to probation violation detainers. *See Carchman v. Nash*, 473 U.S. 716 (1985).

14. Standing alone, a writ of habeas corpus ad prosequendum authorized by 28 U.S.C. 2241(c)(5) is not a "detainer" for purposes of the Act and does not trigger application of the Agreement. However, if a detainer has been filed, use of a writ of habeas corpus ad prosequendum to obtain custody does constitute a "written request" within the meaning of the

Agreement, activating its provisions. *See United States v. Mauro*, 436 U.S. 340 (1978). Nor is application of the Agreement triggered by a writ of habeas corpus ad testificandum, at least where no charges are then pending against the prisoner in the issuing jurisdiction. *See Carmona v. Warden*, 549 F. Supp. 621 (S.D.N.Y. 1982).

15.     Article IV(c) provides that, subject to continuances granted for good cause in open court in the presence of the prisoner or his/her attorney, "trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving [S]tate," otherwise the indictment shall be dismissed with prejudice. (Article V(c)) "(D)elay that is lawful under the Speedy Trial Act generally will comply with the mandate of the Detainer Act." *See United States v. Odom*, 674 F.2d 228, 231 (4th Cir.), *cert. denied*, 457 U.S. 1125 (1982). *See also* Article III(a) (trial must commence within 180 days of receipt by prosecuting State of prisoner's request for final disposition of charges underlying detainer).

16.     In addition, the Speedy Trial Act of 1974, at 18 U.S.C. 3161(j), requires that a U.S. Attorney who knows that a defendant is serving a sentence in a penal institution must promptly obtain the defendant's presence for trial or cause a detainer to be lodged. If the prisoner demands trial and is made available for prosecution, the time limits of the Speedy Trial Act apply, but do not commence to run "until the defendant is actually present for purposes of pleading." See H.R.Rep. No. 93-1508, 93rd Cong., 2d Sess. 36. In the event of conflict between the time limitation prescribed by the Agreement and the Speedy Trial Act, the more stringent should be applied. *United States v. Mauro et al.*, 436 U.S. 340, 356-57 n. 24 (1978) ("The Detainer Act and the Speedy Trial Act deal with the same subject matter. Whenever possible, the interpretation of the Acts should not be discordant.").

17.     In *Mauro et al.* at 346 *et seq.*, one of the respondents, Ford, was arrested on two

federal warrants.  While in the custody, Ford requested a speedy trial on the federal charge by means of letters sent to the United States Attorney for the Southern District of New York and the United States District Court for that District.  Federal officials lodged the federal warrant as a detainer against him with the state prison authorities. Ford moved in the District Court for the dismissal of his indictment on the ground that he had been denied his right to a speedy trial.  In support of his motion, he alleged that he was being denied furlough privileges at the state prison as a result of the federal detainer that remained lodged against him.   The Supreme Court held that "the United States is bound by the Agreement when it activates its provisions by filing a detainer against a state prisoner and then obtains his custody…" at 350.

18. Additionally, the *Mauro et al*. Court stated at 352 that

[t]he central provisions of the Agreement are Art. III and Art. IV.  Article III provides a procedure by which a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer. The warden of the institution in which the prisoner is incarcerated is required to inform him promptly of the source and contents of any detainer lodged against him and of his right to request final disposition of the charges.  Art. III (c).  If the prisoner does make such a request, the jurisdiction that filed the detainer must bring him to trial within 180 days. Art. III (a). The prisoner's request operates as a request for the final disposition of all untried charges underlying detainers filed against him by that State, Art. III (d), and is deemed to be a waiver of extradition. Art. III (e).

18. Similarly, Mr. Booker was denied the programs in P.G. County Jail because of the detainer lodged against him.  On September 28, 2005, after learning of the bench warrant detainer, he sent his requests for a speed trial under the Agreement.  Accordingly, the government had 180 days within to bring Mr. Booker to trial, because of Mr. Booker's request for a final disposition of all charges underlying the detainer.  This had not happen in the 180 day period.

## CONCLUSION

For the foregoing reasons, and any others, which may appear to the Court, Mr. Booker requests that the Court dismiss the indictment in this matter.

Respectfully Submitted,

/s/ Harry Tun
Harry Tun, #416262
400 Fifth Street, N.W.
Suite 300
Washington, DC 20004
(202) 393-2882
*Counsel for Ronald Booker*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14 day of August, 2005, a copy of the foregoing Motion to be delivered by electronic e-mail to Gordon Michael Harvey, Assistant United States Attorney, 555 Fourth Street, N.W. #41816,Washington, D.C. 20530.

/s/ Harry Tun
Harry Tun, Esquire